UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | | Criminal Nº 05-307 (RWR) |
| v | * | <u>UNDER SEAL</u> |
| **MARY McCLENDON** | * | |

**MEMORANDUM IN AID OF SENTENCING**

**A.   Background**

The defendant, through undersigned counsel, presents the following information in aid of sentencing currently scheduled for April 17, 2008.

1. Defendant was originally charged in a 73-count indictment along with fourteen other co-defendants in *United States v Antwan Ball*, Criminal Case Nº 05-100.

2. The defendant entered an early plea of guilty. On August 19, 2005, defendant entered a guilty plea to an *Information* charging her with one count of conspiracy to distribute and possess with intent to distribute cocaine base, in violation of 21 USC §§ 841(b)(1)(A)(iii) and 846.

3. The defendant pleaded guilty to this offense under a cooperation plea agreement with the government.

4. On March 14, 2008, a *Presentence Investigation Report* (PSI) was completed. The defendant's sentencing guidelines were computed to be a Total Offense Level of 34. However, because of two previous felony drug convictions in 1989 and 1990, defendant is considered a career offender under USSG § 4B1.1(a). As a result of her status as a career offender, under § 4B1.1(b), the defendant's Criminal History Category is Category VI. The resultant sentencing range under the guidelines is 262 to 327 months.

5. The Defendant has been advised that the government anticipates filing a USSG § 5K1.1 motion for a downward departure based on "substantial assistance." As part of defendant's cooperation agreement with the government, she met with government prosecutors on several occasions for debriefings concerning the government's investigation and prosecution of others who had committed crimes. As a result of her cooperation during these debriefings she eventually testified against her co-conspirators in the trial of *United States v Antwan Ball,* Criminal Case № 05-100. At all times before and during the course of the trial in that matter, Ms McClendon was always able and willing to cooperate and testify if necessary.

**B.     Determining a sentence after *Booker***

As a result of the Supreme Court's decision in *United States v Booker*, 125 SCt 738 (2005), the sentencing guidelines are now "effectively advisory" in all cases. *Id* at 757. The result is that a district court must now "consider Guidelines ranges," but may "tailor the sentencing in light of other statutory concerns as well." *Id.* Section 3553(a) has been described in *Booker* and much post-*Booker* case law as containing various "factors"—one of which is the Sentencing Guidelines and the guideline range calculated pursuant to them—that must now be considered in determining a sentence. This is a potentially misleading oversimplification. Section 3553(a) is actually comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a), and the "factors" to be considered in fulfilling that mandate. The sentencing mandate is an overriding principle that limits the sentence a court may impose.

**C.     The Section 3553(a) sentencing mandate: The "Parsimony Provision"**

The basic mandate and overriding principle of Section 3553(a) requires a district court to impose a sentence "*sufficient, but not greater than necessary*," to comply with the four purposes of sentencing set forth in Section 3553:

  (a) retribution ("to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense");
  (b) deterrence ("to afford adequate deterrence to criminal conduct");
  (c) incapacitation ("to protect the public from further crimes of the defendant"); and
  (d) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

18 USC § 3553(a)(2).

The sufficient-but-not-greater-than-necessary requirement has been described as the "parsimony provision." *See, e.g.*, *United States v Brown*, 356 F Supp 2d 470, (M D Pa 2005); *see also Bifulco v United States*, 447 US 381, 387 (1980) (explaining that statutory construction "rule of lenity" applies to sentencing statutes as well as to substantive criminal offense statutes). Critically, the parsimony provision is not just another "factor" to be considered along with the others set forth in Section 3553(a). Rather, it sets an independent upper limit on the sentence a court may impose.

**D.** **Sentencing factors**

*United States v Booker* 125 SCt 738 (2005) has returned to the sentencing courts the ability to apply the traditional sentencing factors in determining a sentence. Those factors, as spelled out in 18 USC § 3553, are

 (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
 (2) the need for the sentence imposed –
  (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.
  (b) to afford adequate deterrence to criminal conduct;
  (c) to protect the public from further crimes of the defendant; and
  (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
 (3) the kinds of sentences available.

**E.** **Application of the Statutory Sentencing Factors to the Facts of this Case**

 **1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

From sometime between 1999 and March 2005, Ms McClendon participated as a member of a conspiracy to unlawfully, knowingly and intentionally possess with intent to distribute cocaine base ("crack"). Ms McClendon's role in the conspiracy involved purchasing wholesale quantities of crack cocaine and then redistributing them primarily out of two apartments located on 13th Place SE. Ms McClendon regularly purchased wholesale amounts ranging between ten and twenty ziplock bags of crack cocaine from members of the conspiracy or arranged for purchasers to buy crack cocaine from other members of the conspiracy.

Ms McClendon is a 56-year-old woman who was born and raised in Washington DC. She currently resides with her mother in public housing. Ms McClendon never married but has six children and 17 grandchildren. She is currently unemployed and has no prospects for employment.

Ms McClendon's is severely restricted in her activities due to her weight (365 pounds) and overall general health. She suffers from Type II diabetes and has arthritis in her knees, arms and back and gets around with the aid of a walker. Ms McClenndon submits that her extraordinary physical impairment, namely, her weight and physical condition represent factors that may be reason for the court to depart downward under the *Policy Statement* in USSG § 5H1.4.

**F. Downward Departure for Physical Condition**

Defendant submits that a downward departure is warranted based upon her physical condition and physical infirmities. USSG Section 5H1.4 provides that "an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range— *e g*, in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

Courts have interpreted Section 5H1.4 to mean that in considering whether to depart downward the sentencing court is required to consider defendant's physical infirmity and efficacy of home detention. *United States v Baron*, 914 FSupp 660 (D Mass 1995). Under the circumstances, home confinement would be efficient as and less costly compared with imprisonment. Such confinement would allow defendant to be in an environment that will not exacerbate her conditions and where she

could attend to her medical needs promptly and fully. In reality, McClendon is homebound now as a result of her physical limitations, especially her limited mobility. She rarely leaves the house unless she needs to go to the hospital or to her once-a-year visit to her doctor's office. Ms McClendon's experience reporting to the Probation Office, as a condition of release in this case, provides a good example of the difficulty she undergoes in getting around: Once she arrived at the Courthouse, it took her up to an hour to navigate her way from the entrance of the courthouse to the Probation Officer's office using her walker. Therefore, defendant McClendon submits that a downward departure is warranted.

**G. Downward Departure for Extreme Vulnerability**

Defendant McClendon submits that a downward departure is warranted due to her extreme vulnerability to abuse in prison. USSG § 5H1.4. In *Koon v United States*, 116 SCt 2035, 2053 (1996), the Supreme Court affirmed that susceptibility to abuse in prison may warrant a departure. Defendant McClendon acknowledges that this departure is reserved for extraordinary situations, *see United States v Graham*, 83 F3d 1466, 1481 (DC Cir 1996), *cert denied*, 17 SCt 993 (1997), and "[t]o qualify for a downward departure, a defendant's vulnerability must be so extreme as to substantially affect the severity of confinement, such as where only solitary confinement can protect the defendant from abuse." *Graham*, 83 F3d at 1481 (citing *United States v Lara*, 905 F2d 599, 602-03 (2d Cir 1990)). Courts have recognized, however, that extraordinary physical impairment that results in extreme vulnerability is a legitimate basis for departure. *United States v Long*, 977 F2d 1264 (8th Cir 1992).

Defendant submits that her serious physical impairment will result in extreme vulnerability in prison. At 56 years of age, she is in almost constant pain and it is difficult for her to walk without a walker. Defendant submits that she would be exceedingly vulnerable to victimization and potentially severe or fatal injuries in prison. As in *Long, supra*, "the imposition of a term of imprisonment could

5

be the equivalent of a death sentence for" defendant McClendon. *Id* at 1278. Therefore, defendant submits that a downward departure is warranted.

## CONCLUSION

Defendant also respectfully requests that the Court take into consideration that she was clearly not a major participant in the conspiracy. The Presentence report Writer ascribes neither an aggravating nor mitigating role adjustment under USSG §§ 3B1.1 or 3B1.2. (*See* Page 5, ¶ 12 of the *Presentence Investigation Report*.) Additionally, although the defendant has an adult criminal record that qualifies her as a career offender under USSG § 4B1.1(a), it should be noted that the prior convictions took place over 18 and 19 years ago. She also asks the Court to take into consideration that her family ties are strong and that her family is highly supportive. Above all, she asks the Court to consider that she was not engaged in any violent criminal conduct in furtherance of the conspiracy. Finally, the defendant has admitted her guilt, rendered a guilty plea, thereby saving Court resources, cooperated in the investigation and prosecution of others who had committed crimes, testified in a trial against her co-conspirators, and has been cooperative and truthful in the Court's pre-sentence investigation.

Respectfully submitted,

*Joseph Virgilio*

Joseph Virgilio (Bar № 237370)
1629 K Street NW
Suite 300
Washington   DC   20006-1631
202.686.6914
ATTORNEY FOR MARY MCCLENDON
(Appointed by the Court)

## CERTIFICATE OF SERVICE

I CERTIFY that I mailed, first-class postage prepaid, a copy of the foregoing *Memorandum in Aid of Sentencing* in the case of *United States v Mary McClendon,* Criminal Case № 05-307

(RWR), to Ann Petalas, Esquire, Assistant United States Attorney, 555 4th Street NW, Washington DC 20530 on April 8, 2008.

_Joseph Virgilio_